Good morning. We have four appeals that are scheduled for oral argument this morning. The first is the United States of America v. Raquan Gray. Grace Sims Martin is here for the appellate. Gray and Stuart Walker is here for the government. And Ms. Martin, you may begin your argument.  Good morning, Your Honor. As indicated, my name is Ms. Martin and I am here for appellate Raquan Gray. We have three distinct issues in this case, all of which are fairly intertwined with one another. The first of those issues is whether there was sufficient evidence to determine whether the indictment as drafted was narrowly tailored to allege or alleged a subset offense of a conspiracy to distribute a Schedule II controlled substance specifically, as opposed to any generic controlled substance, therefore making knowledge of that Schedule II status of the drug an essential element of the crime as charged. The third issue, then, is whether that subset issue or that narrowly tailored indictment was constructively amended by the district court judge when he offered his jury instructions in response to the jury's questions that they submitted. I think you had a pretty good argument before Nunez and Colson, maybe, but why don't those cases establish that the specific substance didn't need to be shown, knowledge of the specific substance didn't need to be shown? So I think the distinction between our case, and I will tell Your Honors that this has been a very nuanced issue, I have spent a great deal of time looking at each of the cases here, and I think our distinction is that we are not alleging that Mr. Gray had to have knowledge that it was methamphetamine specifically. Rather, we are arguing that he had to have knowledge that it was a Schedule II controlled substance that was involved in the case. This is based upon a fair reading of the indictment, which says that he knowingly possessed with intent to distribute a Schedule II controlled substance to wit, 50 grams or more of methamphetamine. Schedule II as opposed to what? As opposed to a Schedule I or just a generic controlled substance. We are arguing that that language tailored the essential element of a controlled substance to be a Schedule II controlled substance. How is that argument really any different, though, than what we dealt with in, why is that argument different than a specific substance? What would be the legal reason that you would need to show knowledge of Schedule II where you wouldn't need to show knowledge of methamphetamine? The courts have held that the identity of the substance is not an essential element of a controlled substance crime, which we agree with, but we are arguing that the inclusion of Schedule II modifies that essential element of the controlled substance to a Schedule II controlled substance. So it's not the identity specifically of the drug that becomes the essential element, it's just that Schedule II aspect, because whether it's a controlled substance and whether a controlled substance was involved is an essential element of the crime. Thereby, under the subset analysis, it can be modified in order to require a different proving. And we have relied heavily on the United States v. Keller in that assessment. That case is from 1990, which predates the Nunez decision. In that case, the indictment charged a conspiracy to commit a crime with one another, right, instead of using the generic language that is generally involved in a conspiracy, where it is with unnamed or unknown co-conspirators. The court in Keller thus determined that the lack of inclusion for an unnamed or unknown conspirator created an essential element of the crime being committed with one another. So if one defendant was found guilty, they had to have found that they conspired with the other defendant. Can I ask you a question, though? Doesn't your argument, though, sort of not take into account the evidence case law? I mean, because the government doesn't have to prove that particular knowledge, correct? Well, I think that the government does have to prove that they had knowledge that a controlled substance was involved. And since the element of knowledge of a controlled substance is an essential element, we're arguing that the Schedule II inclusion, especially in the way that it was drafted in this indictment with no mention of a generic controlled substance at all. And you'll see in the indictment that it only alleged controlled substance in one place, and it was directly preceded by the word Schedule II. The only other mention of any drug in that indictment specifically refers to methamphetamine. The jury's deliberate form also only allowed for a finding of methamphetamine. It did not provide any option for the weight of the marijuana that was found in the vehicle or the ecstasy that was found in the vehicle. And it also did not provide an option for zero grams. So the jury was not authorized to find that Defendant Gray possessed zero grams of methamphetamine. They were forced to indicate that he had some amount of methamphetamine, and despite a stipulation that he possessed more, or that there was more than 500 grams of methamphetamine in this case, the jury chose to find that he was guilty of five grams or less, which is the least amount that they were authorized to do on that Berk form. Of course, the government's argument is that the designation of the controlled substance as a Schedule II substance is just surplusage. If he's charged with a conspiracy, the only thing the government has to prove are the three elements of a conspiracy. I think one of the three elements of a conspiracy for this specific offense, though, does involve the knowledge that there was a controlled substance involved. If there was no proof that there was knowledge of a controlled substance, there wouldn't have been a controlled substance violation at all, and there couldn't have been a conspiracy to commit that controlled substance violation. But there's not a different crime for a Schedule I controlled substance versus a Schedule II controlled substance, right? There is not a different crime, but importantly, the statute, the sentencing statute, 841 subsection C, it actually treats Schedule I and Schedule II the exact same. And so we're arguing that because they are treated the same, the inclusion of the Schedule II language could not have been included as an apprendee factor. It's simply not relevant to the apprendee analysis because they get treated the same. But if they get treated the same, then how can you argue that it's a separate element? Well, we're arguing that they narrowly tailored this specific indictment to create that essential element. Didn't we make it clear in Nunez and Colson, though, that we were trying to get away from the need to specifically parse these indictments, that whatever extra information was in there was for sentencing purposes rather than for purposes of establishing the elements of the crime? So Nunez did say that, but Nunez also said that United States v. Aki and United States v. Sanders and the outcomes and the reasoning for those outcomes was still valid. Well, it said the outcomes were still valid, but it did not say that their endorsement of Narog was still valid. It said that the outcomes were still valid. That is correct, but it also said that there was the reasoning for those outcomes was still squaring that with all of the prior case law. I've done a lot of analysis on that specific statement, and it is difficult for me to understand how the reasoning in Aki and Sanders can be valid. I suspect that that was referring to the reasoning for the ultimate outcome, not the reasoning of the Narog statement that turned out to be bad law in terms of being a violation of the prior panel precedent rule. Couldn't you read it in that manner? I suppose you could, but I do think that with the lack of clarity, it has opened up the opportunity for us to make this argument, which under these facts specifically, we know given the note that came back from the jury that they did not believe he was guilty with respect to the methamphetamine, we know that Mr. Gray was convicted for either conspiracy to possess marijuana, a Schedule 1 drug, or conspiracy to possess ecstasy, also a Schedule 1 drug. And we know that his indictment did not put him on notice for that. It did not fairly charge that he was going to have to defend against a marijuana or an ecstasy charge. All of the cases that are relied upon by the government either controlled or alleged at some point in their indictment a generic controlled substance violation without the language of the Schedule or the issue of the scheduling was not raised. And your sufficiency argument depends on us agreeing with your constructive amendment argument, right? If all that needed to be shown was knowledge that it was a controlled substance, the government had enough. Do you agree with that? I do agree with that. Okay. Thank you. All right. Thank you, counsel. You preserved some time for rebuttal. We did. Okay. And we'll hear from Mr. Walker on behalf of the government. Thank you, Your Honor. Thank you. Your Honor, may it please the Court, Stuart Walker on behalf of the United States. Judge Grant, you put your finger right on it. What I've called an as drafted argument that Mr. Gray presents here has to be squarely rejected in light of Colston. It depends on Narag, and this Court in Colston said that Narag's subset analysis and its hypertechnical parsing of indictments is no longer good law. And there's a more fundamental reason. It's because the language at issue in the Colston indictment and the language in Mr. Gray's indictment is verbatim except with the substitution of the word methamphetamine in Mr. Gray's indictment and the word cocaine in LaNesha Colston's indictment. Importantly, Ms. Colston and her co-defendant were charged with conspiring, quote, to distribute a Schedule II controlled substance, comma, to wit, colon, cocaine. Mr. Gray and his co-defendants were charged with a conspiracy, quote, to possess with intent to distribute a Schedule II controlled substance, comma, to wit, colon, 50 grams or more of methamphetamine. The language in both indictments is materially identical, and yet that posed no obstacle to this Court's conviction in Ms. Colston's case. And a straightforward application of Colston here requires the rejection of the argument that the way this indictment in Mr. Gray's case was drafted somehow creates a reason to upset the conviction returned by the jury. On the second constructive amendment argument, our position is that there was nothing amended at all, and that's because the identification of the controlled substance methamphetamine in the amount, 50 grams or more, was included by the government in this case to seek enhanced penalties under 841B, specifically 841B1A. That's the reason for identifying the drug, identity, and the weight, not to make it an element of the charged offense, as it clearly is not under Colston and Nunez and Sanders in a long line of cases going back to 1978 and the former Fifth Circuit. Therefore, the Court's recent statement in Phillips that language that goes above and beyond the statutory elements of the crime charged under the statute, language in an indictment that goes beyond that, is just not part of the charged crime, and so it can safely be put to the side when determining specifically what the elements of the charged offense are. And so because the identification of the substance as methamphetamine and the identification of the amount as 50 grams or more were not elements of the offense, then when the District Court gave the jury an instruction in response to its question that the government didn't have to show that Mr. Gray knew the identity of the controlled substance, it was not amending anything at all in the indictment, and that's consistent with what this Court said in Sanders. And so taken together, both of the arguments raised by Mr. Gray in this appeal are joined by this common thread, and that thread is the erroneous assertion that the government had to prove his knowledge of the methamphetamine in order to convict him of the 846 conspiracy alleged in the indictment. But that argument can't stand in light of Colston and Nunez. Now, the way to deal with Aikie is to say, on which they place a lot of reliance, Aikie had to engage in a lot of analytical gymnastics to try to explain Narog. Narog is an outlier in the Court's jurisprudence, but instead of meeting it head-on like Nunez did two years later and saying that, hey, this can't be squared with the existing precedent under the prior panel precedent rule, it's not good law at all, Aikie just took a twist and turn to try to say why Aikie was unlike Narog, to distinguish Narog. So the ultimate outcome in Aikie, of course, as this Court said in Nunez, was consistent with all of the prior precedent that predated Narog. And so Aikie is of no help to Mr. Gray in this case. All of that boils down to a single question then presented in this appeal, and that is whether the evidence at trial would allow any rational trier of fact to conclude beyond a reasonable doubt that Mr. Gray knew that the object of the conspiracy was a controlled substance, as required by 841A1 and indirectly by 846. I believe I heard my friend on the other side to say that they agree that the evidence was sufficient with that, but for the Court's benefit, I'd like to outline just why that is so. As the Court in Colston said, knowledge of the controlled substance is most often proved by circumstantial evidence. It's rarely ever the subject of proof by direct testimony. And the Court outlined a number of guideposts in Colston that should guide the Court's determination about where circumstances can give rise to an inference of knowledge of the controlled substance. For example, was the defendant instrumental to the plan's success? Did they furnish independent and critical participation in the scheme? Did the defendant have ample opportunity to know a critical fact at issue? Did the defendant act distressed or anxious in the presence of law enforcement? And then finally, did they give after the fact false testimony from which the jury could infer their guilty knowledge? And here, of course, Mr. Gray was instrumental to the plan's success. Mr. Epps testified that when they went to his house that night to pick him up in Atlanta, he's the one that came out of the house with the black bag. He put it in the backseat of the car right beside him. Officer Newberry testified that after the traffic stopped when they searched the car, he retrieved the black bag from the backseat behind the driver's side, behind the driver's seat, right next to where Mr. Gray had been seated. He also testified that a search of that bag at the Crawford County Sheriff's Department revealed the methamphetamine that is the subject of the one count indictment in this case. There was also testimony that when Officer Newberry activated his black lights on the night in question, that Mr. Gray was panicking and looked crazy. And then there's also the ample opportunity he had to discover the contents of the black bag. He rode in the backseat beside it all the way from Atlanta down to Roberta, Georgia. He either didn't look in the bag because he knew meth was in there, or he didn't look in the bag because he wanted to be able to deny that he knew. The district court here gave a deliberate avoidance charge, saying that deliberate avoidance of positive knowledge is equal to knowledge. And that was supportable by the evidence. On top of all of that, Mr. Gray took a stand at trial in his own defense and told a fanciful story about taking this ride down to Americas to visit a friend named KP. He couldn't say how he knew KP. He didn't know KP's address. He was hoping that it would be furnished to him by text message at some point between Atlanta and Americas. He was going to stay with his friend KP in Americas for multiple days, although he took only two jackets and nothing else. In rebuttal, the owner of the house at 209 West College Street in Americas, where he said he was going, this text message came in 30 minutes after they had been taken out of the car and found in possession of all of this contraband. The owner of that house, who had lived there since 2008, had never heard of Ray Quanton Gray, never heard of KP, never heard of Jason Smith, the name associated with the address that was texted to Mr. Gray 30 minutes after they were arrested. In light of all of that circumstantial evidence, we think the evidence was more than sufficient to support the jury's conclusion that Mr. Gray had knowledge that the object of the conspiracy was to possess with intent to distribute a controlled substance, the only thing the government had to prove in this case. And finally, I'll leave the court with this principle, which we think has direct application here. This court has said a conspiracy conviction will be upheld if the circumstances surrounding a person's presence at the scene of conspiratorial activity is so obvious that knowledge of the character, the unlawful character of the scheme can be fairly attributed to the defendant. And we think that principle has direct application here. Unless there are any questions from the panel, we would ask that Mr. Gray's conviction be affirmed. Thank you. All right. Thank you, Mr. Welker. And Ms. Martin, you've reserved some time for rebuttal. Thank you, Your Honors. As indicated, we have conceded the sufficiency issue as to a general controlled substance, so I will not take issue with anything that my counterpart acknowledged except for Colston. I think it is important in Colston that the court acknowledge that there was not an objection made as to the scheduling issue. They specifically emphasized that between two dashes in their language with respect to their holding. And I think that that leaves open the possibility from this court specifically that that issue could be raised at some point had it been raised. It just wasn't in Colston. And so the notion that a holding with facts that are different than ours or distinguishable than ours in response to an objection that is also distinguishable from ours, I think that's what makes our case different than Colston. And I think to argue otherwise would necessarily undermine the court's holding in Keller, where it ruled that as a general thing, it is not required for the government to prove that a conspirator knew the identity of another conspirator. But they then came and said, actually, with the way this indictment is narrowly tailored, we do think that it required knowledge that it was with that specific conspirator because of the way it was drafted. There's nothing in any of these statutes that prohibits the amending or the narrow tailoring of the indictment under them. There's nothing specifically that disallows that. And so I think that Keller gives us a solid foot to stand on to say there is no other reading of this indictment other than a Schedule II controlled substance. There's no mention of a generic controlled substance anywhere. And simply because that issue was not raised in Colston does not mean that it is not a valid legal argument or a valid legal issue. All right. I think we have your argument, Ms. Martin. Thank you. Thank you, Your Honor. Thank you, Mr. Walker.